**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHNNIE D. COOK,                                    Case No. 1:17-cv-532

        Plaintiff,                                    Black, J.
                                                    Bowman, M.J.
    v.

RYAN WOODARD, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

Plaintiff is an experienced pro se prisoner-litigant who has filed three lawsuits, including this one, over the same incident.[1]  This Report and Recommendation ("R&R") addresses two separate dispositive motions in the above-captioned case:  (1) Defendant Ryan Woodard's motion for summary judgment; and (2) Defendant William Cool's motion for summary judgment. (Docs. 35,37).   For the reasons that follow, the undersigned recommends granting judgment to Defendant Woodard, but denying judgment to Defendant Cool on all but one portion of Plaintiff's retaliation claim.

### I.  Background

Plaintiff, who is currently incarcerated at the Southern Correctional Facility ("SOCF"), filed this §1983 action alleging violations of his civil rights during his

---

[1]*See, e.g.,* Southern District of Ohio Case No. 1:17-cv-161 (original case against Defendant *Claude* Woodard, voluntarily dismissed on 1/24/18); Case No. 1:17-cv-765 (case alleging Defendant Cool wrote false conduct report for allegedly forging signature on subpoena; dismissed as frivolously duplicative of the instant case); Case No. 1:18-cv-341 (claim relating to exercise limitation dismissed with prejudice on screening as frivolous); Case No. 1:18-cv-743 (transferred to Eastern Division at Columbus and reopened as Case No. 2:18-cv-1421).   Plaintiff has also filed numerous state court cases, primarily in the Ohio Court of Claims.  (*See* Doc.35 at 22, n.1, listing 15 Ohio Court of Claims cases).

incarceration. Upon screening under the Prison Litigation Reform Act ("PLRA"), the undersigned initially filed a Report and Recommendation ("R&R") that recommended that only a single claim against Defendant Correctional Officer Woodard be permitted to proceed.

In pertinent part, Plaintiff's original complaint alleged that he was involved in a fight with another inmate on November 18, 2016 while inside the Inmate Dining Room. Correctional Officer Brannigan, a non-party, was the first to respond and "tried to separate the both of us." (Doc. 3 at 5). Plaintiff alleges that "multiple Officers responded" shortly thereafter. (*Id.*) Plaintiff alleges that while he was "laying on my stomach in full compliance and handcuffed behind my back, I heard C/O Ryan Woodard yell 'use your P.R.s' then I felt a sharp pain on the right side of my temple." (*Id.*) Although the Court allowed an Eighth Amendment claim against Defendant Woodard to proceed, the R&R recommended the dismissal of other claims and defendants, including a claim against Defendant Cool that was based upon *respondeat superior* (which does not apply in § 1983 suits) and/or was otherwise insufficient to state any claim based on Plaintiff's allegations that Cool "was negligent… as the supervisor" or failed to conduct an adequate "use of force" investigation and/or fully respond to Plaintiff's grievance against C/O Woodard. (*Id.* at 4-5).[2]

After the undersigned filed that first R&R, Plaintiff moved for leave to file an amended complaint to add additional defendants and allegations, which the undersigned construed as a supplement to the original complaint. While recommending dismissal of

---

[2] The first R&R remains pending before the presiding district judge.

all claims against Larry Greene,[3] the undersigned found that the new allegations were sufficient to proceed with a retaliation claim against Defendant Cool. The second R&R explained:

> Plaintiff claims that during the discovery phase of a prior lawsuit filed in this Court, 1 he sent three subpoenas to Warden Ron Erdos, Medical Administrator Mrs. Warren, and defendant Cool. According to plaintiff, Cool retaliated against him by writing a false conduct report stating that plaintiff had forged the subpoenas. In preparation for contesting the conduct report before the Rules Infraction Board, plaintiff claims that he requested Cool, Erdos, and Warren as witnesses. However, on July 7, 2017, he claims he was told that Erdos and Warren would not be called as witnesses and that "I needed to dismiss my civil action or suffer consequences even possibly lose my life." (*Id.* at PageID 52). During the hearing, plaintiff claims that Cool told the RIB chairperson "to find me guilty to show me who's in charge and that I have no rights at all." (*Id.* at PageID 54). Plaintiff was ultimately found guilty by the RIB and sentenced to twenty days in disciplinary control. (Id. at PageID 54). Plaintiff unsuccessfully appealed the result of the RIB hearing to defendant Larry Greene on the ground that his procedural due process rights were violated and that he presented sufficient evidence to overturn the RIB's decision. (*Id.* at PageID 55).

(Doc. 15 at 4).

Following the conclusion of discovery in this case, both Defendant Woodard and Defendant Cool filed separate motions for summary judgment. (Docs. 35, 37). Plaintiff filed a response in opposition to Defendant Cool's motion, but elected not to respond to Defendant Woodard's motion.

## II. Pending Dispositive Motions

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the

---

[3] In other cases, Mr. Greene has been identified as an Assistant Warden or Deputy Warden at SOCF. *See Johnson v. Ervin*, 2016 WL 4198204 at *2 (S.D. Ohio June 17, 2016).

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252. As Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). However, his status as a pro se litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion. *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) ).

**B. Defendant Woodard's Motion for Summary Judgment (Doc. 35)**

Despite being granted multiple extensions of time, Plaintiff failed to file any response to Defendant Woodard's motion for summary judgment. The undersigned now recommends granting that Defendant's unopposed and well-supported motion.

## 1. Res Judicata (Claim Preclusion and Issue Preclusion)

Defendant Woodard first persuasively argues that both claim preclusion and issue preclusion bar Plaintiff's claims, because Plaintiff previously filed suit in the Ohio Court of Claims against the Ohio Department of Rehabilitation and Correction ("ODRC") concerning the same incident, and that court granted summary judgment to ODRC. (*See* Doc. 35-7, Court of Claims Case No. 2017-00104 (June 16, 2017)). A comparison of the records confirms that Plaintiff's state court suit included nearly identical allegations, that Correctional Officer Woodard used his black night stick to strike plaintiff in the side of the head after both he and another inmate had been separated and were being compliant with staff orders. In granting summary judgment, the state court pointed out multiple inconsistencies between Plaintiff's account and the evidence of record. The state court held that Plaintiff not only failed to prove assault, but that his allegations of unnecessary or excessive force failed to demonstrate negligence. (*Id.* at 5). The state court concluded:

> [P]laintiff's characterization of the alleged injury sustained is inconsistent with the medical evaluation conducted shortly after the incident of November 18, 2016. Furthermore, plaintiff asserted a complete investigation was not conducted, however, a review of the case file reveals an appropriate use of force investigation was properly conducted in accordance with OAR 5120-9-01 and 5120-9-02.

(*Id.* at 7-8).

"[T]he res judicata effect of state-court decisions in § 1983 actions is a matter of state law." *Young v. City of Radcliff*, 561 F. Supp. 767, 779 (W.D. Ky. 2008) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 n.2, 114 S.Ct. 2364 (1994) (additional citation omitted)).

> Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated, as well as every theory of recovery that could have been presented. *Id.* Under issue preclusion, once an issue actually is determined by a court of competent jurisdiction, that

determination is conclusive in subsequent suits based on a different cause of action when used against any party to the prior litigation. *Mont. v. United States,* 440 U.S. 147, 152–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

*Cedillo v. TransCor America, LLC*, 131 F.Supp.3d 734, 740–41 (M.D. Tenn. 2015).

Because Plaintiff's claims in the prior Court of Claims case were adjudicated on the merits and involved privies to the same parties, his attempt to bring the same claims in this federal court under a new legal theory is barred. *McQueen v. Pyles*, 2012 4108011 at *2 (S.D. Ohio Sept. 18, 2012), adopted at 2012 WL 4848910 (Oct. 11, 2012)); *see also Foster v. Ohio*, 2018 WL 1516776 (S.D. Ohio Mar 28, 2018), adopted at 2018 WL 2287967 (May 18, 2018).

### 2. Suit Barred under the *Leaman* Doctrine

In addition to the doctrines of claim preclusion and issue preclusion, Plaintiff's current claims are subject to dismissal under *Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946 (6th Cir. 1987) (*en banc*). It is well established that states are entitled to sovereign immunity from suit, absent an express waiver of that immunity. "The Ohio Court of Claims Act waives the state's sovereign immunity and declares that the state consents to be sued in the Court of Claims." *Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987) (en banc), *cert. denied*, 487 U.S. 1205 (1998). In relevant part, Ohio R.C. § 2743.02(A)(1) provides:

> Except in the case of a civil action filed by the state, filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any [state] officer or employee, as defined in section 109.36 of the Revised Code. The waiver shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Plaintiff's prior complaint in the Ohio Court of Claims contained similar allegations and claims against the Ohio Department of Rehabilitation and Correction. As stated, the Ohio Court of Claims case was decided on the merits, with summary judgment being granted to the ODRC.

In *Leaman,* the Sixth Circuit Court of Appeals held that neither the legal basis for the claim, nor the difference in the identity of the defendants (individuals versus the ODRC) is sufficient to escape the waiver. Instead, filing suit in the Ohio Court of Claims bars any later federal suit seeking monetary damages for the same conduct against an individual state officer or employee. The *Leaman* court explained that O.R.C. § 2743.02(A)(1) constitutes "Ohio's statutory offer to subject itself to suit in the Court of Claims in exchange for a waiver of claims against individual state officials." *Id.* at 957. Thus, Plaintiff's decision to sue the ODRC in the Ohio Court of Claims constitutes a waiver of his right to sue Defendant Woodard in this Court under §1983 for the same conduct. *Id.* "Where a claimant elects to sue the state in the Court of Claims, in other words, the state's employees are given an affirmative defense which the federal court has both the jurisdiction and the duty to recognize." *Id.* at 954; *see also Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 460 (6th Cir. 1998) (dismissing a plaintiff's request for monetary relief when she filed an identical complaint in the Ohio Court of Claims after initiating a federal lawsuit); *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995) (same).

The undersigned further concludes that Plaintiff's status as a pro se litigant does not preclude enforcement of the waiver, because Plaintiff has extensive litigation experience in both state and federal courts. *See Foster v. Ohio*, 2018 WL 1516776 at **8-9; *accord Brown v. Mason*, 2012 WL 2892036 (S.D. Ohio July 16, 2012) (applying

waiver to pro se prisoner plaintiff; *Snead v. Mohr*, 2015 WL 1208304 (S.D. Ohio March 16, 2016) (same); *see also McDougald v. Ahmad*, Civil Case No. 1:16-cv-500 (S.D. Ohio April 26, 2017) (Doc. 27, R&R adopted by Order filed 09/8/17). Other courts have applied the waiver against pro se prisoner plaintiffs with a less extensive litigation history. *See, e.g. Easley v. Bauer*, Case No. 1:07-cv-37-SJD, 2008 WL 618642, at *1 (S.D. Ohio Feb. 29, 2008) (prisoner plaintiff who had filed up to ten other pro se actions was experienced litigant and waived his federal right of action); *Williams v. Smith*, 2006 WL 2192470 at **10-11 (S.D. Ohio Aug. 1, 2006) (pro se plaintiff involved in at least three lawsuits based upon the same alleged facts indicated an "above-average understanding of the law for a *pro se* litigant" and therefore supported application of the waiver). Like the plaintiff in *Williams*, Cook's complaints have all been properly captioned, organized into short and clear paragraphs, contained requests for appropriate relief, and cited to federal law. Therefore, the undersigned concludes that Plaintiff has waived his claims against the Defendant Woodard.

### 3. Alternatively, Summary Judgment Should be Granted on the Merits

The undersigned alternatively concludes that Defendant Woodard is entitled to judgment on the merits. Attached to Defendant Woodard's motion are multiple affidavits from witnesses that aver that Woodard did not use his P.R. stick on Plaintiff at any time during the incident, as well as DVR video evidence that clearly refutes Plaintiff's claims. (*See generally* Docs. 35-1 through 35-10). Plaintiff filed no response to Defendant's motion, and has submitted no evidence that creates any genuine issue of material fact. Therefore, even if a reviewing court were to disagree concerning the procedural bars of res judicata and *Leaman,* Defendant Woodard still would remain entitled to summary

judgment on the merits. Having recommended dismissal under res judicata and/or *Leaman*, and having alternatively recommended that judgment be entered in Defendant Woodard's favor on the merits, the undersigned finds no need to review the additional argument that Defendant Woodard is entitled to qualified immunity.

### C. Defendant Cool's Motion for Summary Judgment (Doc. 37)

Plaintiff's retaliation claim against Defendant Cool is substantively distinct from his claim against Defendant Woodard. Of note, Plaintiff's initial complaint included allegations against Cool that were more closely related to the underlying excessive force claim against Defendant Woodard, but were insufficient to state any claim. Instead, Plaintiff initially alleged only "supervisory" liability and/or that Cool should be held liable for failure to properly investigate and respond to his grievance about the November 2016 use of force by Defendant Woodard. The undersigned recommended dismissal of those initial claims as frivolous.[4] (Doc. 4 at 4-5).

In an amended complaint, however, Plaintiff brought entirely new allegations against Defendant Cool based on alleged retaliatory conduct in June and July 2017.[5] Specifically, Plaintiff's amended complaint alleged that during the discovery phase of Case No. 1:17-cv-161, Plaintiff served three subpoenas through the informal prison "kite" system, requesting that Warden Ron Erdos, Medical Administrator Warren, and Defendant Cool appear and produce documents relating to that case. Plaintiff alleges that not only did Defendant Cool fail to respond to the subpoena, but he retaliated by filing

---

[4] Allegations concerning Cool's alleged failure to conduct a complete investigation were included in the previously adjudicated state court case, and arguably also would have been barred by res judicata and/or *Leaman*.

[5] The retaliation claim that was permitted to proceed does not appear to parallel any claim filed in the previously adjudicated state court case.

a false conduct report against Plaintiff, accusing him of forging this Court's signature on the referenced subpoena.

Plaintiff alleges that the conduct report was served on him on June 30, 2017. Prior to the hearing held before the Rules Infraction Board ("RIB"), Plaintiff alleges that he requested Cool, Erdos, and Warren to be called as witnesses, but was told he would not be permitted to call Erdos or Warren, leaving Cool as his sole witness. He alleges that he was told that "I needed to dismiss my civil action or suffer consequences even possibly lose my life." (Doc. 10 at 5). Plaintiff further alleges that during a break in the July 14, 2017 RIB proceedings, Cool told the RIB chair "to find me guilty to show me who's in charge and that I have no rights at all." (*Id.* at 7). Both the conduct report and the related events were considered to be sufficient to state a non-frivolous First Amendment retaliation claim in this case.

Ultimately, Plaintiff was found guilty of the charge by RIB and sentenced to 20 days in disciplinary control. Plaintiff appealed his disciplinary conviction but was unsuccessful.[6]

Defendant Cool's motion for summary judgment on Plaintiff's retaliation claim argues that he is entitled to judgment based upon: (1) Plaintiff's failure to exhaust his administrative remedies; (2) a lack of any material issue of fact showing retaliation; and (3) qualified immunity.

---

[6] In his opposition to summary judgment, Plaintiff includes new allegations about the timing of when Larry Greene signed off on the review of his appeal (allegedly the same day as the hearing), and other alleged procedural irregularities, including the dismissal of his witnesses, a delay in conducting the hearing for which no justification was provided, and the alleged lack of a digital recording of the hearing. (Doc. 47 at 15). No recording of the hearing has been filed with this Court. However, Plaintiff's amended complaint failed to state any claim against Greene, and there is no pending claim concerning alleged due process violations at the RIB hearing. Therefore, the referenced allegations are not relevant to the claims at issue in this case.

**1. Whether Plaintiff Fully Exhausted Administrative Remedies**

Defendant first argues that Plaintiff failed to fully exhaust his administrative remedies, as required under the PLRA, prior to filing suit in federal court. *See* 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies <u>as are available</u> are exhausted.") (emphasis added); *see also, generally Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983 (2002). "[E]xhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 201, 204 (2007). The PLRA requires "proper exhaustion of all administrative remedies," meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo,* 548 U.S. 81, 88–90, 126 S.Ct. 2378, (2002) (emphasis added). If a prisoner fails to exhaust available administrative remedies before filing a complaint in federal court, or only partially exhausts them, dismissal of the complaint is appropriate. *Hopkins v. Ohio Dep't of Corr.,* 84 Fed. Appx. 526, 527 (6th Cir.2003) (citing 42 U.S.C. § 1997e(a)); *see also White v. McGinnis,* 131 F.3d 593, 595 (6th Cir.1997).

Ohio provides a three-step grievance system to every inmate at each of its institutions. *See* Ohio Admin. Code 5120–9–31(K).[7] The first step allows inmates to submit an informal complaint, commonly referred to as an "ICR," to the supervisor of the department or staff member directly responsible for the issue, no later than fourteen days from the date of the event giving rise to the grievance. OAC § 5120–9–31(K)(1). Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification

---

[7] The current procedure is located at Ohio Admin. Code 5120-9-31(J) and includes minor changes to the original text, with an effective date of April 1, 2019.

of Grievance ("NOG") from the Inspector of Institutional Services, and filing that form within fourteen days from the date that the inmate receives a response to his step one complaint. OAC § 5120–9–31(K)(2). If dissatisfied at step two, the inmate may proceed to step three of the grievance process by requesting an appeal form from the Inspector of Institutional Services, and submitting that final appeal to the Office of the Chief Inspector at ODRC. OAC § 5120–9–31(K)(3). Decisions of the Chief Inspector are final with no further means for appeal. OAC § 5120–9–31(K)(3).

The record presented demonstrates that Plaintiff initiated step one of the three-step grievance procedure by submitting an ICR addressed to Warden Erdos relating to the alleged filing of a false conduct report by Defendant Cool in June 2017. In the ICR, Plaintiff complains that Defendant Cook issued a conduct report on June 30, 2017, alleging that Plaintiff had attempted to serve Defendant with a subpoena with a forged signature, as "a form of retaliation due to [a] tort action case that I have in the Court of Claims on the basis that the use of force investigation was not properly conducted and Mr. Cool help[ed] cover up the excessive force against me." (Doc. 37-3 at 1-2). As proof of the absence of any forgery, Plaintiff cites to the fact that the Assistant Ohio Attorney General responded to the subpoenas with other objections to production, without mention of any forgery. Because that ICR was submitted on July 4, ten days prior to Plaintiff's hearing, it contains no reference to additional alleged retaliatory conduct at the July 14, 2017 RIB hearing.

Defendant has filed two copies of the ICR. The otherwise duplicate copies reflect different dates of receipt[8] and different responses. In the earlier dated response, Warden

---

[8] The first copy bears a receipt stamp from the SOCF Warden's Office dated July 12, 2017, with a second receipt stamp from the SOCF Inspector dated July 13, 2017. (Doc. 37-3 at 1). The second copy also

Erdos responds "RIB issues not grievable per ARR 5120-9-31." (Doc. 37-3 at 2). In the second response, signed by Larry Greene, Mr. Greene states "You may exercise the rights afforded to you during the disciplinary processes." (*Id.* at 1). Defendant has submitted uncontroverted evidence that Plaintiff submitted no other grievances relating to his retaliation claim, and that Plaintiff never completed "step three" by appealing to the Chief Inspector.[9] Thus, it is clear that Plaintiff failed to fully exhaust all three steps of Ohio's administrative procedures for his retaliation claim.

That clear failure to exhaust does not end the matter, however, because an inmate is only required to exhaust only "available" administrative remedies. Plaintiff persuasively argues that the record fairly reflects that there were no administrative remedies "available" for his complaints about Defendant Cool, because both responses to his ICRs essentially stated that the allegations therein were not grievable.

In *Ross v. Blake*, 136 S.Ct. 1850, 1855 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA," while underscoring the limited circumstances in which exhaustion is excused by the express language of the PLRA because a remedy is not "available." The Court then explained the proof required to demonstrate that remedies were not "available" in order to excuse the exhaustion requirement.

> [T]he Supreme Court laid out three circumstances providing an exception to the PLRA's exhaustion requirement. *Id.* at 1859. These three circumstances are: 1) "when (despite what regulations or guidance

reflects two receipt stamps, but both are from the SOCF Inspector. The latter stamps are dated July 5 and July 7, 2017. (Doc. 37-3 at 2).

[9] Defendant also argues that Plaintiff did not complete step two. In his response in opposition, Plaintiff argues that Institutional Inspector Ms. Mahlman refused his request for an NOG form at step two on the grounds that conduct reports are not grievable. (Doc. 47 at 7-8). In a reply, Defendant Cool objects to that explanation, noting that Plaintiff has offered it for the first time in opposition to Defendant's motion, and that the assertion is unsupported by an affidavit or other evidence of record. The undersigned finds no need to examine whether Plaintiff exhausted at step two, given that he did not exhaust step three.

materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use[—i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and 3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Blissit v. Fiquris*, 345 F.Supp.3d 931, 939-40 (S.D. Ohio 2018) (quoting *Ross* at 1859-1860, granting summary judgment where inmate failed to properly exhaust and did not establish exception to exhaustion).

On similar facts, the undersigned previously concluded that when SDOH officials clearly conveyed that a complaint was "not grievable," the inmate sufficiently demonstrated a lack of "available" administrative remedies to excuse his failure to exhaust under the statutory exception as defined in *Ross*. *See Brooks v. Dillow*, 2016 WL 6493419 at **5-6 (S.D. Ohio Nov. 2, 2016), adopted at 2016 WL 7034241 (Dec. 2, 2016); (see also Doc. 47 at 26, Plaintiff's Ex. 5 at 2, stating that grievances concerning a hearing officer or an R.I.B. decision, or grievances concerning "[a]ny process that carries its own appeal process, such as classification placements, reviews or P.C. hearings, are not grievable."). On the record presented, the undersigned also concludes that Defendant Cool is not entitled to dismissal of the claims against him for failure to exhaust.

### 2. Whether Genuine Issues of Fact Remain on Retaliation Claim

The undersigned determined on initial screening that the additional allegations against Defendant Cool in Plaintiff's amended complaint were sufficient to state a non-frivolous claim of retaliation under the First Amendment. The Sixth Circuit has "repeatedly held that to succeed on a First Amendment retaliation claim, a plaintiff must show that:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).  As a second basis in favor of granting summary judgment, Defendant Cool now argues that Plaintiff cannot produce sufficient evidence to prove all three elements of his claim.  I disagree.

### (a) Constitutionally Protected Activity

Plaintiff alleges that Defendant Cool filed his false conduct report and/or encouraged his disciplinary conviction in retaliation for Plaintiff's earlier civil lawsuit against Claude Woodard.  It is undisputed that Plaintiff has a constitutional right to file a prison grievance or a civil lawsuit without fear of retaliation.  *See Smith v. Campbell*, 240 F.3d 1032, 1037 (6th Cir. 2001); *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).

Here, however, Defendant argues that the conduct that underlies the alleged retaliation - Plaintiff's filing of the prior federal lawsuit - Case No. 1:17-cv-161, was "frivolous and meritless and not a protected activity."  (Doc. 37 at 14).  Defendant is correct that an inmate has no constitutional right to file frivolous grievances or lawsuits. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996) for the proposition that "[d]epriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). However, Defendant is mistaken in describing Plaintiff's prior lawsuit as "frivolous."  To the contrary, by virtue of the fact that summons was issued to "Claude" Woodard (who filed an answer), Plaintiff's Eighth Amendment claim was

deemed to be non-frivolous on initial screening.[10]  *See Cook v. Woodard*, Case No. 1:17-cv-161 (Doc. 6; *see also* Doc. 8, setting pretrial deadlines).

Plaintiff alleges that he requested six subpoenas from this Court for the purpose of conducting discovery in Case No. 1:17-cv-161. (*See* Doc. 10 at 5).[11]  Ordinarily, any pro se plaintiff who is pursuing a non-frivolous civil lawsuit may request subpoenas from this Court in order to prosecute his or her civil claims.  While a prisoner-plaintiff may be more restricted in the pursuit of civil discovery than a non-incarcerated individual, nothing in this record suggests that Plaintiff here was precluded by security concerns from seeking subpoenas for written discovery from the Clerk of Court.   Therefore, Plaintiff's request for subpoenas following the entry of a pretrial order authorizing discovery in Case No. 1:17-CV-161 would amount to constitutionally protected conduct.  As stated, Plaintiff's later motion to voluntarily dismiss Case No. 1:17-cv-161 does not render either his request for discovery or the underlying case "frivolous."[12]

In short, the undersigned concludes that Plaintiff had a First Amendment right to file suit in Case No. 1:17-cv-161, and that his conduct in attempting to serve subpoenas relating to that case was also subject to First Amendment protection.  *Accord Maben v.*

---

[10] Without citation to the record, Defendant asserts that "Claude" Woodard was not involved in the November 18, 2016 incident.   On July 3, 2017, Plaintiff moved to dismiss Case No. 1:17-cv-161 so that he could refile a suit against "the correct person."  (*Id.*, Doc. 15). Assuming that Plaintiff mistakenly sued "Claude" Woodard in Case No. 1:17-cv-161 rather than "Ryan" Woodard, Plaintiff's good faith error does not render the prior suit "frivolous."

[11] Plaintiff does not identify the prior case number in the instant complaint, but he does not dispute that the exhibit submitted by Defendant Cool in support of summary judgment, bearing Case No. 1:17-cv-161, is the same subpoena that was served on Defendant Cool.

[12] Plaintiff's July 7, 2017 motion to voluntarily dismiss Case No. 1:17-cv-161 cited "retaliation" by prison officials who had by then charged Plaintiff with a disciplinary violation based on the allegedly "forged" subpoenas.  (*Id.*, Doc. 16 at 1).  Plaintiff's unopposed motion to dismiss was granted without comment. (*Id.*, Docs. 18, 19, 20).

*Thelen*, 887 F.3d 252, 264 (6th Cir. 2018).   Therefore, the record contains sufficient

evidence of the first element of Plaintiff's retaliation claim to survive summary judgment.

### (b) Sufficiently Adverse Action

Defendant Cool next argues that because Plaintiff was convicted in the RIB

hearing, the charge cannot be viewed as false, and therefore is not an "adverse action"

sufficient to satisfy the second element of a retaliation claim.   Citing *Jackson v. Madery*,

158 Fed. Appx. 656, 662 (6th Cir. 2005), Defendant asserts that the finding of guilt in the

RIB hearing "essentially checkmates [a] retaliation claim" (internal quotation marks and

additional citation omitted).

Defendant's reliance on the unpublished *Jackson* case is unpersuasive.  The Sixth

Circuit expressly rejected the "checkmate doctrine" last year in the published decision of

*Maben v. Thelen*, 887 F.3d at 262-263. When deciding whether the issuance of a

disciplinary charge rises to the level of an adverse action, the Sixth Circuit instructs trial

courts to "look to both the punishment [the plaintiff] could have faced and the punishment

he ultimately did face."  *Id.*, 887 F.3d at 266 (citing *Scott v. Churchill*, 377 F.3d 565, 572

(6th Cir. 2004)).  The filing of a disciplinary charge ordinarily will demonstrate a sufficiently

adverse action to deter "a person of ordinary firmness" from protected activity unless the

potential punishment is "*de minimis*" or "inconsequential."  *Id.*, at 267.  The record here

reflects that Plaintiff was confined to 20 days in disciplinary segregation, which is more

than a "*de minimis*" punishment.   Moreover, the filing of the conduct report actually

deterred Plaintiff from continuing to pursue his case, insofar as he filed a motion to

voluntarily dismiss Case No. 1:17-cv-161 in part based on the alleged "retaliation."

Cool presents additional argument that, even if the conduct report is considered to be adverse, Cool's later conduct at the RIB hearing cannot be considered to be adverse, because Plaintiff first moved to dismiss Case No. 1:17-cv-161 more than a week prior to the July 14 RIB hearing. Considering the close temporal proximity of the events in question, there is little to suggest that Cool's alleged retaliatory motive would entirely dissipate the moment Plaintiff agreed to dismiss his prior suit.

However, Defendant has submitted evidence that challenges Plaintiff's account of his conduct prior to and at the RIB hearing (apart from the issuance of the conduct report itself). In his amended complaint, Plaintiff alleges that after he requested three witnesses to appear at his RIB hearing, on July 7, "I was told that Ron Erdos and Mrs. Warren will not be called as witnesses and that I needed to dismiss my civil action or suffer consequences even possibly lose my life. So I waived both Ron Erdos and Mrs. Warren." (Doc. 10 at 5). Importantly, Plaintiff does not identify Defendant Cool as the individual who threatened him and/or told him that he would not be permitted to call additional witnesses.[13] Still, Plaintiff does allege that when Plaintiff presented evidence at the hearing that an Assistant Ohio Attorney General had responded to the subpoenas without objecting that they were "forged," Defendant Cool suggested the Plaintiff "may have also forged" the AG's responses. (Doc. 10 at 7).[14] After a "heated argument" during a brief period that was off the record, Plaintiff further alleges that Defendant Cool "told the

---

[13] In his memorandum in opposition to summary judgment, Plaintiff asserts that it was Sgt. McCroskey, the hearing officer, who told Plaintiff that he did not need the extra witnesses, who allegedly appeared and the hearing but were dismissed. (Doc. 47 at 3-4, 13).

[14] The RIB disposition states: "The board believes that Inmate Cook did forge the name of the Clerk of Courts of the United States District Court on a subpoena form and did distribute these to SOCF staff to include Mr. Cool and try to pass them off as being genuine and legal. I contacted Ms. Bishop (SOCF legal services) who told me that Ms. Ina Avalon at the AGs office was not aware at the time that the subpoenas were forged and answered them but is now aware that they were not legitimate." (Doc. 37-5 at 8).

Chairperson to find me guilty to show me who's in charge and that I have no rights at all."

(*Id.*).

Contrary to those allegations, Cool has submitted an affidavit in which he unequivocally denies, at any time before or at the RIB hearing, that he

> made any comments threatening Cook or …any comments referring to being upset at his filing of lawsuits against other prison staff. Also during the RIB hearing, I made no comments to the RIB Chairman directing him to find inmate Cook guilty.

(Doc. 37-1 at ¶6). Defendant also has filed the affidavit of David McCroskey, the Chairperson who presided at the RIB hearing and adjudged Plaintiff guilty of the rule violation. In his affidavit, Mr. McCroskey avers:

> Mr. Cool did not tell me…to find inmate Cook guilty while off the record. In general, Mr. Cool did not tell me to find inmate Cook guilty on or off the record. Inmate Cook's guilt was only determined in light of the evidence presented before the RIB.

(Doc. 37-2 at ¶6).

In the face of these affidavits, Plaintiff may not rest on his pleadings but must produce some evidence to create a genuine issue of material fact. Defendant's affidavits demonstrate a lack of any "adverse action" beyond the issuance of the conduct report itself. Because Plaintiff has produced no evidence to support his allegations that Cool engaged in additional retaliatory conduct before or at the RIB hearing, or to refute Defendant's contrary evidence concerning those events, Defendant Cook is entitled to judgment as a matter of law concerning the limited issue of the alleged "adverse actions" before or at the RIB hearing. By contrast, as set forth above, Plaintiff has put forth sufficient evidence to defeat summary judgment by showing that the conduct report alone was a sufficiently adverse action on which to proceed with his First Amendment claim.

### (c) Causation

In a final argument that Plaintiff cannot produce sufficient evidence to support his claim, Defendant Cool challenges Plaintiff's ability to produce evidence of a "causal connection" between the first two elements of his retaliation claim.

> Under the third element, "the subjective motivation of the defendants is at issue." *Id.* at 399. "The analysis of motive in retaliation claims is well-developed" - "[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Id.* (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* A defendant must make this showing by a preponderance of the evidence. *King v. Zamiara*, 680 F.3d 686, 709 (6th Cir. 2012).

*Maben*, 887 F.3d at 262 (additional internal citations omitted). In *Maben*, the court noted that although the question of causation is "usually…a factual issue to be resolved by a jury," "a court may grant summary judgment even in a causation inquiry, where it is warranted." *Id.*, at 267 (internal quotation marks and additional citations omitted).

Plaintiff has presented evidence that Defendant Cool issued a conduct report charging Plaintiff with forgery either on the same day or within a short period after Plaintiff served Defendant Cool with the subpoena seeking civil discovery in Case No. 1:17-cv-161. A copy of the Conduct Report states in full:

> On June 19, 2017, I received a kite from I/M Cook…with a United States District Court subpoena addressed to DWO William Cool for information related to a Use of Force that occurred involving I/M Cook and I/M Creech…. In the area for the Clerk or Deputy Clerk, there is a name scribbled in the section but there is no seal or stamp from any court. This subpoena was scanned to OSC Legal to ascertain the validity of the subpoena and to determine if an answer was to be returned to the inmate. I was advised that the subpoena was forged and to not answer it. Kite dated 6-14-17 and subpoena are submitted with this conduct report for a Rule 28, Forging, possessing, or presenting forged or counterfeit documents.

(Doc. 37-5 at 1). Thus, not only was there temporal proximity between the protected conduct and the allegedly retaliatory conduct report, but the subject matter of the conduct charge was directly related to the prosecution of the prior civil case. Plaintiff has easily met his burden of showing that his protected conduct played some role in the issuance of the conduct report.

The only remaining issue is whether Cool has produced sufficient evidence on summary judgment to demonstrate, by a preponderance, that Plaintiff's protected conduct actually played no role at all in the issuance of the conduct report. "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X v. Blatter*, 175 F.3d at 399. However, summary judgment is warranted only if, in light of the evidence viewed in favor of the plaintiff, no reasonable juror could fail to return a verdict for the defendant. *Dye v. Office of the Racing Com'n*, 702 F.3d 286, 294-295 (6th Cir. 2012). "Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims." *Id.* at 295.

In *King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012), as here, the plaintiff had established the first two elements of his retaliation claim – that he had engaged in protected activity and that the defendant took an adverse action against him. In *King*, the defendants increased the plaintiff's security level after he engaged in protected activities that included filing grievances and participating in a prior civil case against state prison officials. The case went to trial solely on the issue of causation. The trial court ruled in favor of the defendants, and the plaintiff appealed pro se. The Sixth Circuit reversed in

part, finding error in the trial court's evaluation of the defendants' "subjective motivation." The court's analysis is instructive:

> [P]rotected speech causes an adverse action if the speech motivates an individual actor to take acts that then proximately cause an adverse action. Subjective motivation appropriately enters the picture on a retaliation claim because our concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment. *Block v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (internal quotation marks omitted). Thus, causation in retaliatory claims may really be considered a two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, *Siggers–El v. Barlow,* 412 F.3d 693, 702 (6th Cir.2005), but also (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right," *Thaddeus–X,* 175 F.3d at 386.

*King v. Zamiara*, 680 F.3d at 695.

Considering the first prong of the two-part *King* inquiry, the undersigned concludes that the adverse disciplinary consequences suffered by Cook were proximately caused by Cool's issuance of the conduct report. The only question that remains is whether Cool has met his burden of production to prevail on the second prong, by proof that he was not "motivated in substantial part" by retaliatory animus, such that no reasonable trier of fact could find for the Plaintiff on the element of causation.[15]

On the one hand, because Plaintiff was charged with misconduct for what itself was protected activity (serving a subpoena on the Defendant that facially purports to have issued from this Court), it would seem difficult for Defendant Cool to produce evidence

---

[15] In *Thaddeus-X,* the court set forth the plaintiff's burden to show that the adverse action was "motivated in substantial part" by the plaintiff's constitutionally protected conduct. *Id.* at 386. "Substantial" is not defined. However, *Thaddeus-X* also states that "ff the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* at 399. Arguably, a defendant could prevail if he produces evidence that no genuine issue of material fact exists that his motive to retaliate was "insubstantial," even if not entirely absent.

that he would have charged Plaintiff with the same misconduct "in the absence of the protected activity." On the other hand, the undersigned considers whether the alleged forgery should be viewed as a separate event based upon Cool's non-retaliatory explanation for the filing of the conduct report. In other words, if this Court concludes that no reasonable juror could disbelieve Cool's proffered non-retaliatory reasons for issuing the conduct report, might the "causation" link be broken? Mindful that all reasonable inferences are to be drawn in favor of the Plaintiff at this stage, the undersigned concludes that a genuine issue of material fact remains concerning the Defendant's subjective motivation and/or whether his asserted motivation was pretextual.[16]

"Rare is the case where a defendant testifies on the record that [he] intended to retaliate against a prisoner for exercising a constitutional right." *King v. Zamiara*, 680 F.3d at 701. The question for this Court is whether the Defendant's affidavit, offering testimony that Cool issued the conduct report based upon his own investigation and facts from which he inferred the document was forged, satisfies Defendant's burden of production such that he is entitled to summary judgment.

In addition to noting that the subpoena lacks an official Court seal and/or stamp,[17] Cool's affidavit states as follows:

> 3. In this case, I received a subpoena from inmate Cook to appear at a deposition and bring certain documents. I was confused after receiving the subpoena I was alarmed because I had never received a subpoena from an

---

[16] The focus, for purposes of the causation element of the retaliation claim, remains on the Defendant's motivation. From that perspective, whether Plaintiff actually forged the subpoena is not dispositive. Still, evidence of forgery could indirectly support the reasonableness of Defendant's proffered non-retaliatory reasons for filing the conduct charge, just as evidence of authenticity might be probative of the lack of reasonableness of the charge.

[17] The Clerk of this Court uses an embossed (but not inked) seal at times, which presumably would not appear on a xeroxed copy of a subpoena. Thus, no inference can be drawn in favor of the Defendant and against the Plaintiff concerning the perceived absence of a stamp or seal.

inmate kite.  Normally the legal office would receive them and sen[d] them out.  After receiving it, I contacted the legal office and Sherri Bishop to look into it because it was not the normal channels used and issued a conduct report based on the information that was present.

4. After receiving the advice from OSC Legal that the subpoena was forged and that I should not answer it, I followed their advice.  At this time, Inmate Cook did not compel me to comply with the subpoena via a court order, etc.

5. I then created a Conduct Report…based on the knowledge that was available to me by OSC Legal towards a Rule 28 violation…. The Conduct Report wrote was an accurate rendition of the facts that led up until that point.

(Doc. 37-1).   Cool's affidavit is unrebutted by any *direct* evidence submitted by Plaintiff.

However, on summary judgment, this Court may not rely solely on Defendant's

evidence.  Instead, the court must review the record as a whole, including circumstantial

evidence, while construing all inferences in favor of the Plaintiff.

Motive is often very difficult to prove with direct evidence in retaliation cases. *Bloch,* 156 F.3d at 682–83. Circumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct. We have previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive. *Paige,* 614 F.3d at 282–83; *Muhammad v. Close,* 379 F.3d 413, 417–18 (6th Cir.2004) ("[T]emporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.") (internal quotation marks omitted).

*King v. Zamiara*, 680 F.3d 686, 695-96 (6th Cir. 2012).

Here, the temporal proximity between service of the subpoena and the adverse

action was virtually immediate – Defendant's own affidavit closely ties the receipt of the

subpoena to the conduct report.  The contested subpoena itself, dated June 1, 2017,

yields additional circumstantial evidence.  The subpoena appears to be a standard AO

Form 88A for a "Subpoena to Testify at a Deposition in a Civil Action," which forms are

routinely issued by the Clerk of Court in civil cases. In addition to bearing a case caption that denotes Case No. 1:17-cv-161, the exhibit of record appears to bear the signature of Benjamin Codispoti, an employee of the Clerk of Court for the Southern District of Ohio. (*See* Doc. 37-5 at 12; Case No. 1:17-cv-161, Doc. 17-1 at 2).[18] Plaintiff alleges that he forwarded a copy of the referenced subpoena to Cool (who was not a party in Case No. 1:17-cv-161) and to defense counsel, who responded with objections that the subpoena to Mr. Cool and similar subpoenas were cumulative and duplicative of other requests.

To counter the inference of retaliatory motive that arises from the temporal proximity alone in this case, Defendant points to other evidence that ostensibly supports his belief that the subpoena was forged. For example, in addition to his affidavit, Defendant argues that the docket sheet in Case No. 1:17-cv-161 does not reflect either the Plaintiff's written request for subpoenas or the Clerk's issuance of those subpoenas. However, the Clerk of Court does not routinely docket requests for subpoenas or the sending of blank subpoena forms to civil litigants. If a reviewing court would conclude such judicial notice exceeds the authority of the undersigned, the undersigned would alternatively find no record evidence to support Defendant's hypothesis that the absence of a docket notation reasonably supports a conclusion that the subpoena was a forgery.

Other circumstantial evidence concerning the Defendant's motivation is either ambiguous or favors the Plaintiff. Frankly, it is unclear what would motivate Plaintiff to forge the Clerk's signature on a facially legitimate subpoena form, when he easily could have obtained an authentic version through a written request to the Court. In fact, Plaintiff

---

[18] Curiously, the copy of the subpoena addressed to Mr. William Cool filed in Case No. 17-cv-161 and served on defense counsel (Doc. 17-1 at 2) varies slightly from the copy (ostensibly of the same subpoena) filed in this case. (Doc. 37-5 at 12).

has provided a copy of his written request for the subpoena as an exhibit, and the same correspondence appears in Case No. 1:17-cv-161. (Doc. 47 at 22; *see also* Doc. 17-1 in Case No. 1:17-cv-161). And, despite the allegedly unusual method of service, Defendant does not point to any institutional rule or legal authority for the proposition that attaching a copy of a subpoena to a kite renders a subpoena invalid. Ordinarily, if someone served with a subpoena questions the method of service or its validity, he would appeal to the issuing court for a protective order. Of course, in this instance, Ohio Assistant Attorney General Avalon did not move for a protective order but instead filed a response to the subpoena on Cool's behalf. (Doc. 47 at 24). The undersigned further notes that although Defendant's affidavit refers to the subpoena as commanding his presence at a "deposition," the box on the subpoena form for "testimony" is not marked. However, a date, time and location are set forth in the "testimony" section, along with two questions it appears as if Plaintiff either intends to ask Cool or Plaintiff is requesting answers, by way of declaration or affidavit. It is not clear. In addition, Plaintiff has checked a box to reflect that the subpoena is seeking the production of certain documents. (Doc. 37-5 at 12).

Defendant Cool's affidavit does not identify who at "OSC Legal" informed him "the subpoena was forged," or precisely when that occurred. Ms. Bishop, a paralegal at SOCF who serves as "the litigation contact for the Ohio Attorney General's Office," submitted a separate affidavit attesting to the authenticity of the RIB record exhibits, but her affidavit is silent concerning any conversation with Defendant Cool or the AG's office concerning a determination that the subpoena was "forged." (Doc. 37-4). Defendant does not suggest that the Assistant Attorney General who responded to the subpoena had (or

communicated) any contemporaneous belief that the subpoena was forged, and counsel's response to the subpoena runs counter to any such belief.

Considering the record as a whole and drawing all reasonable inferences in favor of Plaintiff as the non-moving party, the undersigned finds a genuine issue of material fact remains as to whether the Defendant was subjectively motivated by Plaintiff's protected activity. Defendant has failed to show that he would have filed the same conduct report in the absence of Plaintiff's constitutionally protected prosecution of Case No. 1:17-cv-161, even if he reasonably believed that the subpoena was forged. "It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X*, 175 F.3d at 386; *accord Block v. Ribar*, 156 F.3d at 681-82. At trial, the factfinder may well believe Defendant's non-retaliatory explanation. However, when viewed in the context of summary judgment, the undersigned concludes that a reasonable jury could return a verdict for the Plaintiff.

### 3. Qualified Immunity

Defendant Cool's final argument in favor of summary judgment rests on his assertion of qualified immunity. The purpose of qualified immunity is to provide governmental officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012 (1984). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). A governmental official is

entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). Once a defendant has raised the defense of qualified immunity, the plaintiff bears the burden of proof to show that the defendant is not entitled to that defense. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

Defendant argues first that Plaintiff has failed to make out a violation of a constitutional right. However, as discussed above, the undersigned finds that Plaintiff had a constitutional right to file a non-frivolous claim in Case No. 1:17-cv-161.

The undersigned also finds unpersuasive Defendant's assertion that "the act of writing up a conduct report, or even a false one if we believe the Plaintiff, does not violate a constitutional right of a Plaintiff inmate." (Doc. 37 at 21). The critical distinction here is Defendant's alleged retaliatory motive in filing the false report, which does violate a clearly established constitutional right. It has long been well established that "the First Amendment bars retaliation for protected speech." *Crawford-El*, 523 U.S. at 582, 118 S. Ct. at 1594. The *Mabin* court similarly dispensed with the defendants' contention that an inmate's right to be free of retaliatory charges was not clearly established:

> [T]his Court has repeatedly recognized that if a prison officer "retaliated against [a prisoner] for filing grievances," the "alleged conduct also comprises a violation of clearly established constitutional law." *Noble*, 87 F.3d at 162 (citations omitted); *King v. Zamiara*, 150 Fed. Appx. 485, 493 (6th Cir. 2005) ("Charging an inmate with misconduct is an adverse action because serious consequences can flow from erroneous charges."); *Scott*, 377 F.3d at 572 (finding it clearly established that "the false issuance of a misconduct charge is unconstitutional retaliation"); *Bell*, 308 F.3d at 612.

*Id.* at 269; *see also id.* at 270 (rejecting theory that an inmate's rights for a retaliatory "minor" misconduct charge were not as "clearly established" as rights concerning a

"major" misconduct charge).  For similar reasons, the undersigned rejects Defendant's argument, as unsupported by controlling law,[19] that a "reasonable officer would have believed Cool's actions in writing the conduct report were reasonable." (Doc. 31 at 21).

Defendant next broadly asserts that "there is no 'established right' for inmates to serve subpoenas on upper-level prison officials demanding prison documents while incarcerated in a maximum security prison."  (Doc. 37 at 21).  There are two problems with this argument.  First, by defining the contours of the right in terms of a specific action undertaken in the prosecution of a non-frivolous civil case – service of a document subpoena on an upper-level official - the Defendant too narrowly limits the constitutional right at issue.  Based on the conduct report, Plaintiff has provided evidence that, if believed, demonstrates that Defendant retaliated against him based on his exercise of his clearly established First Amendment right to prosecute his non-frivolous civil case.

Second, even if the Defendant's narrow definition of the constitutional right at issue were to be accepted, none of the handful of cases cited by Defendant deny the existence of a First Amendment right to pursue document discovery, such that a prison official may charge an inmate for misconduct merely for attempting such a thing.  To the contrary, discussing the problem of potentially frivolous prisoner litigation in *Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 1597 (1998), the Supreme Court stated that once a plaintiff's case "survives …initial hurdles and is otherwise viable, the plaintiff ordinarily will

---

[19]Defendant cites numerous unpublished cases from outside the Sixth Circuit.  The published law cited by Defendant is valid for general principles, but is easily distinguished from the retaliation claim at issue.  *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012) (stating, in reviewing a constitutional challenge to strip searches, that courts should defer to the officer's "expert judgment" in matters of institutional security).   The cited unpublished cases concern due process claims relating to disciplinary proceedings, not retaliation claims.  *See Lee v. Pauldine*, 2013 WL 65111, 2013 U.S. Dist. LEXIS 1497, *21 (S.D. Ohio 2013) (granting motion to dismiss procedural due process claim based on allegedly false conduct report where plaintiff failed to allege irregularities at hearing that would state a claim).

be entitled to some discovery." Defendant's cited cases go no further than recognizing that reasonable limits on that right may be enforced within prison walls, typically in the context of oral depositions. *See generally, In re Wilkinson*, 137 F.3d 911, 914-915 (6th Cir. 1998) (noting that courts may restrict the ability of inmates to attend oral depositions based on security and safety concerns); *Myers v. Andzel*, 2007 WL 3256879, 2007 U.S. Dist. LEXIS 79156 at *1 (S.D.N.Y. 2017) (denying motion for leave to take oral depositions of non-parties by pro se, incarcerated litigant because oral depositions by prisoners on the record presented are "disfavored in this District"). Not only is the right to pursue non-frivolous civil litigation clearly established, but so too is the closely-related right to serve written discovery requests in the pursuit of that litigation.

Returning to earlier arguments, Defendant Cool asserts that Plaintiff cannot show that Cool violated his constitutional rights because, in Cool's view, the conduct report reflected an accurate charge. Defendant maintains that even if an inmate has a right to pursue some discovery in a non-frivolous civil case, an inmate still would have no constitutional right to serve a forged subpoena on a prison official, in the same manner an inmate has no right to pursue a frivolous grievance or lawsuit. In other words, a valid misconduct charge ostensibly would not violate a constitutional right, so long as it was not issued in retaliation for any protected activity. *See generally*, *Maben*, 887 F.3d at 269-270.

As discussed, *Mabin* forecloses any argument that this Court must accept the RIB finding of guilt on the forgery charge. However, in *Mabin*, the defendant similarly argued that he was entitled to qualified immunity based on evidence that he reasonably believed plaintiff to be guilty of misconduct because the plaintiff was causing a disturbance. The

appellate court rejected that argument because, on summary judgment, trial courts must "assume the truth of all record-supported allegations by the non-movant." Thus, the trial court erred in crediting the defendant's version of events. *Id.* at 269 (quoting *Buys v. Montmorency Cty.*, 874 F.3d 264, 268 (6th Cir. 2017)); *see also Griffin v. Condon*, 744 Fed. Appx. 925, 928 (6th Cir. 2018) (rejecting qualified immunity defense because it was "clearly established" that filing a false conduct charge for protected speech violates the First Amendment). Under either prong of the qualified immunity analysis, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Mabin*, at 269, quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)). Consistent with controlling Sixth Circuit case law and based on the evidence in this record, the undersigned concludes that Plaintiff has presented sufficient evidence to overcome Defendant's assertion of qualified immunity.

In *Crawford-El*, the Court noted that a defendant may still prevail on qualified immunity in retaliation cases if there is "doubt as to the illegality of the defendant's particular conduct (for instance, whether a plaintiff's speech was on a matter of public concern)." *Id.*, 118 S.Ct. at 1594, 523 U.S. at 593. But that exception has no application here. The Court recognized one other possible qualified immunity defense to a First Amendment retaliation claim:

> [A]t least with certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation—there must also be evidence of causation. Accordingly, when a public employee shows that protected speech was a "motivating factor" in an adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct.

*Id.* For the reasons explained in evaluating Plaintiff's prima facie case on causation, Defendant also cannot prevail on qualified immunity under this second exception.

The undersigned reiterates that at trial, a reasonable jury may yet believe the Defendant's non-retaliatory explanation and find in the Defendant's favor. On the record presented, however, genuine issues of material fact remain that preclude summary judgment. *See Marr v. Fields*, 420 Fed. Appx. 499 (6th Cir. 2011) (holding that fact issues precluded summary judgment where the defendant had failed to show she would have taken the same disciplinary action in the absence of Plaintiff's grievances, even though she had issued an "authorized" penalty for misconduct); *Griffin v. Berghuis*, 563 Fed. Appx. 411, 421 (6th Cir. 2014) (denying qualified immunity because, drawing inferences in plaintiff's favor, a reasonable prison official should have known that filing a false misconduct charge in retaliation for exercise of First Amendment rights was unconstitutional);

### III. Conclusion and Recommendations

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. Defendant Woodard's motion for summary judgment (Doc. 35) should be **GRANTED**, with all claims to be dismissed against that Defendant;

2. Defendant Cool's motion for summary judgment (Doc. 37) should be **GRANTED IN PART** as to Plaintiff's limited claim that Defendant engaged in retaliatory conduct shortly before or during the RIB hearing, but shall be **DENIED** concerning Plaintiff's claim that Defendant charged him with a conduct report in retaliation for his exercise of his First Amendment rights.

3. If this Report and Recommendation is adopted, the presiding district judge should set this case for trial.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

JOHNNIE D. COOK,                                          Case No. 1:17-cv-532

        Plaintiff,                                          Black, J.
                                                         Bowman, M.J.
    v.

RYAN WOODARD, et al.,

        Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).