IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHNNIE D. COOK, : | |
| : | Case No. 1:17-cv-00532 |
| Plaintiff, : | |
| : | Judge Timothy S. Black |
| v. : | |
| : | Magistrate Judge Stephanie K. Bowman |
| RYAN WOODARD, et al., : | |
| : | |
| Defendants. : | |

## DEFENDANT COOL'S PARTIAL OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DOC #49)

Defendant Cool objects to the Magistrate Judge's June 4, 2019 Report and Recommendation ("R&R") (Doc. #49). Defendant objects only to the portion of the R&R denying Defendant Cool's Motion for Summary Judgment pertaining to the First Amendment retaliation claim concerning the "false" conduct report.

Defendant Cool's Objections are filed pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C). A memorandum in support is set forth below.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

/s/Zachary M. Holscher
ZACHARY M. HOLSCHER (0098039)

/s/Thomas E. Madden
THOMAS E. MADDEN (0077069)
Senior Assistant Attorney General
Criminal Justice Section, Corrections Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Phone: (614) 644-7233; Fax: (866) 239-5489

thomas.madden@OhioAttorneyGeneral.gov
zachary.holscher@OhioAttorneyGeneral.gov
*Trial Attorneys for Defendants Woodard and Cool*

**MEMORANDUM**

**I.     INTRODUCTION**

Plaintiff Johnnie Cook, #591270, is an inmate at Southern Ohio Correctional Institution. ("SOCF"). Plaintiff was admitted to the custody and control of the Ohio Department of Rehabilitation and Correction on August 19, 2010. *Offender Details*, Ohio Department of Rehabilitation and Correction, www.drc.ohio.gov/OffenderSearch (last visited October 31, 2017). Plaintiff is serving an indefinite sentence of life in prison for his sentence handed out by Summit County Common Pleas Court. *Id.*

Plaintiff initiated this civil rights action under 42 U.S.C. § 1983 against Defendants Ryan Woodard, William Cool, and Roger Weaks. [Doc. #1; Doc. #3] Later, Plaintiff filed an Amended Complaint for the retaliation claims for Deputy Warden Cool which were ordered to proceed in the Court's Order and Report and Recommendation. [Doc. #10; Doc. #15, PageID#89]

Plaintiff's Amended Complaint alleges that on July 14, 2017, at SOCF, Defendant Cool retaliated against Plaintiff by writing a conduct report that was allegedly "false." [Doc. #10, PageID#52]. Further, Plaintiff continues his retaliation claim claiming that he was told before the RIB hearing, on July 7, 2017, by someone that he "needed to dismiss [his] civil action" or there would be consequences. Also, Plaintiff claims that during Plaintiff's Rules Infraction Board ("RIB") hearing, while off record, Defendant Cool retaliated by telling the RIB chairperson "to find [him] guilty to show [him] who's in charge." [Doc. #10, PageID#54].

Defendant Cool now comes before this Court asking that summary judgment be entered in his favor as there are no genuine issues of material fact as Plaintiff is barred because he failed to exhaust administrative remedies for his claims and because he did not violate the First

3

Amendment right of Plaintiff. Due to this, Defendant asks that this Court grant summary judgment in favor of Defendant and Plaintiff's Complaint be dismissed with prejudice.

## II. STATEMENT OF FACTS

On November 18, 2016, Plaintiff Cook (inmate #591270), was involved a dining hall fight with fellow inmate Creech (inmate #591270) at Southern Ohio Correctional Facility to which there was a Use of Force investigation. [Doc. #3, PageID#26]. On March 13, 2017, Plaintiff Cook filed a complaint against Claude Woodard regarding a Use of Force incident occurring after the fight. [*See Cook v. Woodard*, No. 1:17-cv-161 (S.D. Ohio 2017)]. On June 19, 2017, Defendant Cool received a kite from Plaintiff Cook regarding a Southern District of Ohio subpoena addressed to him requesting him to show up for a deposition and to bring certain documents related to a Use of Force incident. [Exs. 1, p. 1; 5, p. 1]. Defendant Cool examined the document, which had no seal and rather only contained a signature scribbled in. [Ex. 5, p. 1]. Defendant Cool had never received a subpoena like this and was sent to Sherri Bishop, the SOCF paralegal, to send to OSC Legal to check the validity of the subpoena and determine whether an answer was to be returned to the inmate. [Exs. 1, p. 2; 5, p. 1]. OSC legal advised Defendant Cool that the subpoena was forged and to not answer it. [Exs. 1; 5, p. 1].

After being advised by OSC legal regarding the status of the subpoena, Defendant Cool submitted the conduct report for a Rule 28 violation for forging, possessing or presenting forged or counterfeit documents. [Exs. 1, p. 2; 5, p. 1]. It was at this time that Defendant Cool selected, as the charging official, to not have input in the disciplinary hearings. [Ex. 5, p. 1]. On June 30, 2017, after the conduct report was submitted, a hearing officer referred the instance to the Rules Infraction Board ("RIB"). [Ex. 5, p. 2]. On July 3, 2017, Plaintiff Cook filed a motion to dismiss his civil case against Claude Woodard. [*See Cook v. Woodard,* No. 1:17-cv-161 (S.D. Ohio

4

2017)]. After this, on July 7, 2017, he filed a motion to dismiss his case "due to retaliation", but mentions filing against the wrong party initially. [*Id.*] It was around this time on July 5, 2017 that Plaintiff Cook sent an Internal Complaint Resolution ("ICR") received by Warden Erdos regarding the Conduct Report written by Cool. [Ex. 3, p. 2] Warden Erdos told Plaintiff Cook that RIB issues were not grieveable. [*Id.*] Plaintiff Cook did not follow up after this regarding appealing the ruling. [Ex. 7, p. 2]. Unsatisfied with the answer, on July 12, 2017, Plaintiff Cook submitted another ICR to Warden Erdos claiming the exact same issue. [Ex. 3, p. 1]. This time, it was received by Administrative Assistant for the Warden Larry Greene, to which he told Plaintiff Cook, "You may examine the rights offered to you during the disciplinary processes." [*Id.*] On July 14, 2017, the RIB found Plaintiff Cook guilty of committing a Rule 28 violation. [Ex. 5, p. 8]. The Result was upheld by Larry Green in the Warden's Administrative Review [Ex. 5, p. 9]. Plaintiff Cook then had fourteen (14) days from the date of incident to file a grievance if he believed Defendant Cool had committed a grievable act at the RIB hearing, which he did not do. [Ex. 7, pgs. 2-3].

Plaintiff's Amended Complaint alleges that on July 14, 2017, at SOCF, Defendant Cool retaliated against Plaintiff by writing a conduct report allegedly "false." [Doc. #10, PageID#52]. Further, Plaintiff continues his retaliation claim claiming that he was told before the RIB hearing, on July 7, 2017, that someone told him that he "needed to dismiss [his] civil action" or there would be consequences. Also, Plaintiff claims that during Plaintiff's Rules Infraction Board ("RIB") hearing, while off record, Defendant Cool retaliated by telling the RIB chairperson "to find [him] guilty to show [him] who's in charge." [Doc. #10, PageID#54]. Defendant Cool now asks the court to grant a motion for summary judgement as Plaintiff's claim fails to show genuine issues of material fact and the claims should be dismissed accordingly.

### III. STANDARD OF REVIEW

#### a. Objections to a Magistrate Judge's Order (Fed. R. Civ. P. 72)

The Federal Rules of Civil Procedure set the standard of review for a district court's disposition of objections made to a magistrate judge's order, stating in pertinent part, "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A district judge conducts his or her review of objections under a de novo standard. Fed. R. Civ. P. 72(b)(3).

Objections to a Magistrate Judge's factual findings are reviewed under the "clearly erroneous" standard, while objections to a Magistrate Judge's legal conclusions are considered under the "contrary to law" standard. *Itskin v. Gibson*, No. 2:10-CV-689, 2012 U.S. Dist. LEXIS 32169, at *3 (S.D. Ohio Mar. 9, 2012) (quoting *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). Factual findings may be overturned under the "clearly erroneous" standard only when the district court is left with a definite and firm conviction that a mistake has been made. Id. (citing *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995)). The district court's review of legal conclusions under the "contrary to law" standard is plenary, and the court "may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." Id. (quoting Gandee, 785 F. Supp. at 686).

### IV. LEGAL ARGUMENTS

#### a. Exhaustion did not occur in Plaintiff's retaliation claims.

Plaintiff failed to exhaust his administrative remedies contrary to the mandatory requirements of the PLRA. The Prison Litigation Reform Act of 1995 ("PLRA") prohibits an inmate from bringing a 42 U.S.C. § 1983 action "until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement is not a mere hoop that an inmate must jump through before bringing suit, but rather one that forecloses judicial discretion if not properly adhered to by the Plaintiff. *Ross*, 136 S. Ct. at 1857.

However, the Supreme Court has determined that "[a] prisoner need not exhaust administrative remedies if they are not 'available.'" *Ross*, 136 S.Ct. at 1855. Because of this, the PLRA's wording creates a textual exception that hinges on administrative remedies being available. *Id.* at 1858. The Court further elaborated on these circumstances leading to the "availability" exception: 1) "When (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use[—i.e.,] some mechanism exists to provide relief but no ordinary prisoner can discern or navigate it"; and 3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In Ohio, all grievances must be "resolved at the lowest step possible." Ohio Adm. Code 5120-9-31(J). The only time a grievance can be filed directly to the office of the Chief Inspector is when the grievance is against the warden or against the inspector of the institutional services (the local prison inspector). Ohio Adm. Code 5120-9-31(L). However, all other grievances *must* go through a three-step procedure detailed in Oho Adm. Code 5120-9-31(J) (emphasis added). First, within 14 days of the event giving rise to the complaint, an informal complaint must be sent to "the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Adm. Code 5120-9-31(J)(1). If the matter is not resolved or the inmate is not satisfied with the results, then they can file the grievance within 14

days to the inspector of institutional services. Ohio Adm. Code 5120-9-31(J)(2). If the inmate is then not satisfied, an appeal may be filed within 14 days to the office of the Chief Inspector. Ohio Adm. Code 5120-9-31(J)(3).

This required process of Ohio prison grievances is "primarily designed to guide correctional officials in prison administration . . . ." *State ex rel. Larkins v. Wilkinson,* 79 Ohio St. 3d 477, 479 (1997). Further, this procedure enables the prison system to reasonably investigate and resolve complaints as locally as possible by investigators who are most familiar with the institution and best equipped to deal with the complaint. *Cf.* Ohio Adm. Code 5120-9-31(J). All inmates in the custody of ODRC are given both written and oral instructions on how to use the grievance system, including instructions on appeals to the Chief Inspector's office and how to file direct grievances to that office, as required by Ohio Admin. Code §5120-9-31(C).

Here, the R&R states that although the inmate was told that he, "may examine the rights offered to you during the disciplinary processes," this "essentially stated that the allegations therein were not grievable." [Ex. 3, p. 1; Doc. #49, PageID#448]. The R&R states that the situation indicates that it was "clearly conveyed" to the inmate that a complaint was "not grievable" to excuse his failure to exhaust. [Doc. #49, PageID#449]. Such a situation is not the case here. Although Plaintiff was given a previous order that his issues were not grievable, Plaintiff then grieved them again, telling him to "examine the rights offered to you during the disciplinary process." [Ex. 2, pg. 1-2]. This is not the same as telling him that his grievances were not grievable, nor is it the same where it was "clearly conveyed" that he could take no further steps. In addition to that, this would not fall within one of the recognized exceptions being that it was not a simple dead end, a scheme incapable of use, or thwarting by prison

8

officials. Because of this, Plaintiff failed to exhaust his retaliation claims and he could not fall within a recognized exception to such a rule and should be dismissed.

      **b. Plaintiff's retaliation claim does not fulfill the elements, specifically the causation element under the Supreme Court's newly-enacted standard.**

A retaliation claim must consist of three elements: (1) The plaintiff engaged in protected conduct; (2) the defendant took an adverse action against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first two elements, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Clark v. Corr. Corp. of Am.*, No. 03–6377, 113 Fed. App'x 65, at *68 (6th Cir. 2004) (*citing Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

      *1. Plaintiff's underlying activities were not protected conduct.*

Under the first element, courts have previously determined that filing a prison grievance or a civil suit is considered constitutionally protected conduct for which an inmate cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). Although true, frivolous grievances or civil suits are not protected in an effort to manipulate the grievance system. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Bell*, 308 F.3d at 607. Thus, for a retaliation claim to continue the "pursuit of legal claims…was protected conduct only to the extent that the underlying claims *had merit*." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir 2000) (emphasis added). This frivolous nature can also be determined by the facts of the case. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (explaining that a claim is frivolous if it lacks an arguable basis either in law or fact). *See also Buchanan v. Price*, No. 1:16CV2005, 2018 U.S. Dist. LEXIS 141760, *5-6 (N.D. Ohio Aug. 21, 2018) (determining that inmate Plaintiff's "complaint at the core…was frivolous. Where an inmate cannot show any evidence that his

9

complaints to prison officials had legitimacy, his use of the prison grievance system for such frivolous complaints is not protected conduct.").

Here, the R&R points to the fact that the underlying claim was "non-frivolous" in nature due to the fact: that there was a "good faith" error of filing on the wrong party, because the Plaintiff's second motion for voluntary dismissal mentions retaliation. [Doc. #49, PageID#450-451]. The R&R also mentions that the seeking of subpoenas were protected that there were no "security concerns from [him] seeking subpoenas for written discovery." [Doc. #49, PageID#451].

First, the underlying claim to which Plaintiff seems to imply that Defendant Cool was motivated by was the civil suit against Claude Woodard. [*See Cook v. Woodard*, No. 1:17-cv-161 (S.D. Ohio 2017)]. Plaintiff Cook sued Claude Woodard and then later moved to dismiss the case on July 3, 2017. [*Id.* at Doc. #15]. Claude Woodard had no involvement with November 18 incident in the cafeteria, a fact alluded to in his second dismissal motion as he improperly filed it against the wrong Woodard. [*Id.* at Doc. #16]. Thus, the underlying facts at the heart of the claim, that Claude Woodard was involved in a use of force claim was meritless in nature, and thus, made his underlying suit frivolous. *Neitzke*, 490 U.S. 319 at 325; *Buchanan*, 2018 U.S. Dist. LEXIS 141760 at *5-6. Any such "good faith" error does not eliminate the lack of merit of the suit.

Second, Plaintiff's second motion to dismiss in the *Cook v. Claude Woodard* case, filed days after he already moved to dismiss his suit, mentions retaliation but fails to support such an assertion in its content. [*See Cook v. Woodard*, No. 1:17-cv-161, Doc. #16]. Although Plaintiff claims that his dismissal is due to "retaliation", but later mentions that "only for that reason [for seeking to file a civil action case against Ryan Woodard] Plaintiff would dismiss his civil action

10

so that he can properly file the Defendant as Ryan Woodard." [*See Cook v. Woodard*, No. 1:17-cv-161, Doc. #16, PageID#51]. In the motion, Plaintiff claims that he is scared because of his previous filings, but now wishes to have a new suit instituted against those same people that have allegedly caused this fear. [*See id.*] Quite simply, such an action taken does not make sense. The R&R relying on this "retaliation" claim when determining its frivolous nature is in error as he throws out these words, but explicitly indicates that such a reason was not the main reason for dismissal.

Lastly, the R&R indicates that he was seeking written discovery from his subpoena, but he was seeking more: a deposition testimony that was to be taken a certain place and time and to be recorded by a certain method, which was not listed as by written questions. [See Ex. 5, Pg. 12]. Plaintiff also made a note of seemingly what topic would cover or questions he was going to ask. [*Id.*] These actions further indicate that he was seeking non-written discovery in the form of an oral deposition—the security concerns for which would be extensive in nature. *See infra* discussion Section IV(c).

Due to the above, Plaintiff's underlying claim was frivolous and meritless and not a protected activity. In addition, Plaintiff's action seeking a deposition of Defendant Cool was not a protected activity either. Thus, in regard to his retaliation claim against Defendant Cool, Plaintiff fails to meet the first element.

### 2. *The Causal Connection Was Not Shown by Plaintiff*

When determining the causation element of retaliation, the Sixth Circuit has seemingly disavowed the "checkmate doctrine", which essentially relieves liability of a charging officer if found guilty at a misconduct hearing, instead indicating that "[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the

burden of production shifts to the defendant." *Maben v. Thelen*, 887 F.3d 252, 262, 2018 U.S. App. LEXIS 8389, *15 (6th Cir. 2018) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). It continues that "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.*

Although true, recent Supreme Court precedent has indicated a change regarding the proof needed to show retaliation and resulting burden shift. Now, a plaintiff must show that the defendant's retaliatory motive is the "but for" cause of the injury and "would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715 2019 U.S. LEXIS 3557, *12-13 (2019). The Court goes on to discuss that when indicating such in prosecutorial cases alleging retaliation, "the plaintiff must also plead and prove the absence of probable cause" for the charges against them. *Id.* at *14-15 (citing *Hartman v. Moore*, 547 U.S. 250, 265-266 (2006)). The Court reasons that "[d]emonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Id.* at *15 (citing *Hartman*, 547 U.S. at 261).

First, even applying the same standard as was used in R&R, Plaintiff failed to show that he met his burden to shift it to the Defendant. Plaintiff had to prove that his "protected conduct was the motivating factor behind any harm"; a fact that the R&R seems to state was "fulfilled" by the "temporal proximity" of the issuance of the subpoenas and Plaintiff being wrote up for the Conduct Report. [Doc. #49, PageID#455]. This and this alone is what the R&R seems to rely on to indicate that the Plaintiff has met his burden. [*Id.*] Although the R&R states that "Plaintiff has

presented [such] evidence", the evidence mentioned (Conduct Report and Subpoena issuance) was not originally offered by the Plaintiff to show that there was any sort of motivating factor, but rather was introduced first by the Defendant to show the lack of a retaliatory motive. [*See id.*; Ex. 1, pgs. 1-2; Ex. 5, pg. 1]. *This* evidence was used to come to the conclusion that "Plaintiff has easily met his burden of showing that his protected conduct played some role in the issuance of the conduct report." [Doc. #49, PageID#456]. Because of the lack of evidence presented on his behalf, Plaintiff has failed to meet the requirements of *Maben* to shift the burden of showing it was a "motivating factor." Further, although the R&R mentions that Defendant Cool presented a "non-retaliatory explanation" and that his affidavit "is unrebutted by any direct evidence submitted by Plaintiff", the R&R continued on to find that Defendant Cool had not met *his* burden. [Doc. #49, PageID#458]. Such a finding seems contrary to its conclusions about the evidence that was presented on Defendant Cool's behalf. [*See id.*] Thus, even applying the standard applied to in the R&R, such a finding that an issue of genuine material fact was in error.

  Second, since the Supreme Court has changed binding precedent by their recent decision in *Nieves v. Bartlett*, the R&R decision should be reversed regarding the retaliation of a "false" conduct report. 139 S. Ct. 1715 2019 U.S. LEXIS 3557 (2019). As the Court's new standard indicates, the plaintiff would have to indicate that the retaliatory motive was the "but for" cause of the injuries. Plaintiff does not. [Doc. #10, PageID#48-56; Doc. #47, PageID#397-427]. Plaintiff fails to again present evidence showing any sort of motivation by Defendant Cool, let alone that it was the "but for" reason for the charges. Plaintiff presents only conclusory accusations of retaliation without any direct showings of animus on behalf of Defendant Cool. [Doc. #10, PageID#52]. In addition to this, as the Court illustrates, a plaintiff in a prosecutorial retaliation case (which this would fall under) would have to show that there was *no* probable

cause to charge him with the violation. Again, he does not. [Doc. #10, PageID#48-56; Doc. #47, PageID#397-427]. Plaintiff merely tried/tries to state a response that his subpoenas were "cumulative and duplicative" from an AAG, and that he sent a letter to the court, that this would add to his innocence. [Doc. #47, PageID#400]. This evidence fails to prove that there was "no probable cause" to charge him with the offense and indicate that the sole reason for the prosecution was any motivation by Defendant Cool. As a matter of fact, as the RIB conduct held, this evidence was not enough to show otherwise and he was charged with the rule violation. [Ex. 5, Pg. 8]. Accordingly, Plaintiff has failed to meet his burden of proof and has failed to show a causal connection and his retaliation claim should be dismissed.

Thus, since Plaintiff had not met his burden under the previous standard, or the newly-created standard by the Supreme Court, Defendant Cool should be entitled to summary judgment motion on the retaliation claim against him regarding the "false" conduct report.

### c. Defendant is entitled to qualified immunity.

Qualified immunity protects Defendant Cool for the incident in question. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once raised by a defendant, the plaintiff "bears the ultimate burden of proof to show that [government officials] are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (*quoting Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005). The plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a

constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury. *Saucier*, 533 U.S. at 201.

When determining whether a right is "clearly established" for purposes of the qualified immunity determination, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*quoting Saucier*, 533 U.S. at 201). However, a right is clearly established when "every reasonable official would [have understood] that what he is doing violates that right." *Reichie v. Howards*, 132 S.Ct. 2088, 2093 (2012). Thus, for a right to be "clearly established… [the] existing precedent must have placed the statutory or constitutional right question *beyond debate*." *Ashcroft v. al-Kid*, 563 U.S. 731, 741 (2011) (emphasis added). To overcome a qualified immunity defense, "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitely unlawful." *Vincent v. City of Sulphur,* 805 F.3d 543, 547 (5th Cir. 2015). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S.Ct. 548, 552 (2017). Cook cannot rely on a "handful of decisions of other circuits or district courts, which are admittedly novel, [but] cannot form the basis for a clearly established right[.]" *Ohio Civ. Serv. Employee Assoc. v. Seiter*, 858 F.3d 1171, 1177 (6th Cir. 1988). To be more direct, district court decisions (or even decision from other circuits) cannot form clearly established law. *Cavin v. Mich Dep't of Corr.*, 2019 U.S. App. LEXIS 18057, *10 (6th Cir. 2019) (citing *Camreta v. Greene*, 562 U.S. 692, 709 fn. 7 (2011)).

On this same note, the Supreme Court has indicated that "courts should ordinarily defer to [correctional officers'] expert judgment in such matters." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012). *See also Sumpter*, 868 F.3d at 480; *Marcum v. Jones*, 2009 U.S. Dist. LEXIS 91642, *9 (S.D. Ohio 2009). "Especially in the context of prison security, we cannot—and do not—require public officials to be perfect in their assessments." *Aref v. Lynch*, 833 F.3d 242, 268 (D.C. Cir. 2016).

Not only did the Magistrate Judge fail to point to clearly established law, but rather, the law is decisively contrary to Plaintiff. Courts have found that writing conduct reports, or ones based on mistaken beliefs, alone, does not violate inmate's constitutional rights for purposes of qualified immunity. *See e.g.*, *Lindell v. O'Donnell*, 2005 U.S. Dist. LEXIS 24767, *87-88 (W.D. Wis. 2005) (holding qualified immunity applied to retaliation claims involving an officer who wrote a conduct report in response to an inmates threat to sue); *Spencer v. Wilson*, 2012 U.S. Dist. LEXIS 79832, at *6 (E.D. Ky. June 8, 2012) ("[t]he act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights."); *Freeman v. Rideout*, 808 F.2d 949, 952-53 (2nd Cir. 1986) ("the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges."); see also *Lee v. Pauldine*, 2013 U.S. Dist. LEXIS 1497, *21 (S.D. Ohio 2013) (citing to both *Spencer* and *Freeman*).

In addition, federal courts have acknowledged the rights of *pro se* inmates' ability to conduct discovery involving subpoenas and depositions are limited. *See e.g.*, *In re Wilkinson*, 137 F.3d 911, 914-915 (6th Cir. 1998) (To allow inmates to serve deposition subpoenas "district court to consider both the interests of the inmate… and of the prison system in maintaining security and safety in the prison."); *Myers v. Andzel*, 2007 U.S. Dist. LEXIS 79156, *1

16

(S.D.N.Y. 2017) ("Depositions conducted by pro se, incarcerated litigants are generally disfavored in this District."); *Lovett v. Barney*, 2016 U.S. Dist. LEXIS 47936, *3 (S.D. Ohio 2017) ("The Court finds that the prison order and security concerns raised by defendants weigh against plaintiff's request to conduct oral depositions. Prison officials retain some discretion as to whether to permit an incarcerated litigant to personally appear to take a deposition, taking into consideration factors such as cost, inconvenience, danger, and the disruption to the correctional operations.") (internal citations omitted).

Here, the R&R seems to hinge its finding that there was a constitutional violation that was "clearly established" on the retaliatory motive of the Defendant. [Doc. #49, PageID#463]. This would need to be established by Plaintiff as it is his burden to combat against the defense of qualified immunity, a fact he only conclusory alleges without any evidence showing there was any such motive. *See Cockrell*, 468 F. App'x 491 at 494. Furthermore, neither Plaintiff, nor the Magistrate Judge, points to any on point case law that would have placed Defendant Cool on notice that his actions would violate Cook's constitutional rights. In fact, the Magistrate Judge faults Defendant Cool for arguing qualified immunity "too narrowly" when he pointed out no case law establishes the right of "service of a document subpoena on an upper-level official." [Doc. #49, PageID#464]. However, the defense of qualified immunity requires specificity. *Jasinki v. Tyler*, 729 F.3d 531, 540 (6th Cir. 2013) ("The standard requires courts to examine the right asserted 'at a relatively high level of specificity, and on a fact-specific case-by-case basis.'") Without a case from the Sixth Circuit or Supreme Court to point to, which is not some overgeneralized statement of law, Plaintiff has not met his burden. *Cavin*, 2019 U.S. LEXIS 18057 at *11 (indicating that clearly established law cannot be analyzed "from 60,000 feet.").

Instead, "the clearly established law must be particularized to the facts of the case." *Id*. (citing, *Pauly*, 137 S.Ct. at 552).

In addition to this, when reviewing the right of the inmate to serve subpoenas on prison staff, the court mistakenly again provides that, "Plaintiff has provided evidence…that Defendant retaliated against him." [Doc. #49, PageID#464]. Again, this evidence of the Conduct Report was first provided by Defendant Cool to show a lack of animus towards Plaintiff. Nevertheless, the court points to the fact that there exists a right for a Plaintiff "to pursue document discovery". [Doc. #49, PageID#464]. The R&R further asserts that Defendants stance that a Plaintiff inmate's ability to receive such documents can be limited does not further any finding of a lack of constitutional; but this is in error. As is indicated, an inmates' rights to discovery are balanced "maintaining prison security and safety in the prison." *In re Wilkinson*, 137 F.3d at 914-915. Defendant's listed cases show a lack of recognized outright constitutional right to pursue any and all discovery methods upon which they may want. *See e.g.*, *In re Wilkinson*, 137 F.3d at 914-915; *Myers*, 2007 U.S. Dist. LEXIS 79156 at *1; *Lovett*, 2016 U.S. Dist. LEXIS 47936 at *3. Contrary to the R&R's assertion that the right to "serve written discovery requests" is "clearly established," courts have indicated that this balancing test may tip the scale in favor of the prison and prison officials. *See id.*

First, if Plaintiff were not an inmate and not subject to the basic limitations of prison, the R&R would be correct, but due to Plaintiff's current incarceration, indicating that an inmate plaintiff has an unabated constitutional right to discovery and seeking depositions of prison officials is in error. *See id.*; *Price v. Johnston*, 334 U.S. 266, 285 (1948) ("[l]awful incarceration brings about the necessary withdrawal or limitation of a man's privileges or rights, a retraction justified by the considerations underlying or penal system."). Second, Plaintiff was doing more

18

than seeking written discovery requests, instead seeking that prison officials show up for a deposition. [Ex. 5, Pg. 12]. Such security concerns indicate that having an inmate conduct a deposition of prison officials would limit any such discovery methods.

Lastly, the R&R lists an exception upon which "the evidence of causation" must be shown, merely indicating a "motivating factor" would render Defendants' qualified immunity argument victorious. [Doc. #49, PageID#466]. In the R&R's analysis for such, it states that "[f]or the reasons explained in evaluating Plaintiff's prima facie case on causation, Defendant also cannot prevail on qualified immunity[.]" [*Id.*] As previously indicated, Plaintiff has failed to Present a prima facie case on causation contrary to the R&R's assertion. Plaintiff failed to meet his burden under the previous standard to prove that retaliation was a "motivating factor" behind the injury to shift the burden to the Defendant Cool. *See supra* discussion Section IV(b)(2). Even so, Defendant Cool indicated that that he would have taken the same action regardless by offering a "non-retaliatory explanation." [Doc. #49, PageID#458]. Further, Plaintiff failed to prove causation under the recently-enacted Supreme Court standard to indicate that the retaliation was the "but for" cause of the injuries and that there was no evidence of probable cause to charge him with the rule violation itself. *See supra* discussion at Section IV(b)(2). Thus, even if the R&R was correct on the other aspects of the constitutional right being "clearly established," the R&R falls short in its finding that such an exception would not apply because Plaintiff has failed to merely show that retaliation was a motivating factor behind the injury—let alone sufficient evidence of causation. Thus, qualified immunity would apply and protect Defendant Cool.

V. **CONCLUSION**

For the foregoing reasons, Defendant Cool respectfully requests that the District Court decline to partially adopt the Magistrate Judge's Report and Recommendation as it pertains to Plaintiff's Retaliation claim alleging a "false" conduct report and thus grants Defendant Cool's Motion for Summary Judgment in its entirety.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

/s/Zachary M. Holscher
ZACHARY M. HOLSCHER (0098039)

/s/Thomas E. Madden
THOMAS E. MADDEN (0077069)
Senior Assistant Attorney General
Criminal Justice Section, Corrections Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Phone: (614) 644-7233; Fax: (866) 239-5489
thomas.madden@OhioAttorneyGeneral.gov
zachary.holscher@OhioAttorneyGeneral.gov
*Trial Attorneys for Defendants Woodard and Cool*

## CERTIFICATE OF SERVICE

I certify that the foregoing *DEFENDANT COOL'S PARTIAL OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DOC. #49)* was filed via electronic transmission on JULY 2nd, 2017, and was sent by regular, first-class mail to Johnnie D. Cook, #A591-270, Toledo Correctional Institution, 2001 East Central Ave. Toledo, Ohio 43608.

/s/Zachary M. Holscher
ZACHARY M. HOLSCHER
Assistant Attorney General